UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

William Richard Iverson,

Petitioner,

vs. REPORT AND RECOMMENDATION

Warden Dingle and
State of Minnesota,

Respondents. Civ. No. 02-340 (DSD/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 7th day of February, 2003.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, under Title 28 U.S.C. §2254. The Petitioner has appeared by Katherine M. Menendez, Assistant Federal Defender,[1] and the Respondents have appeared by Mark Nathan Lystig, Assistant Ramsey County Attorney. For the reasons which follow, we recommend that the Petition be dismissed, with prejudice.

---

[1]We appointed counsel for the Petitioner pursuant to Title 18 U.S.C. §3006A(a)(2)(B). See, Docket No. 12.

FEB 07 2003

(7)

## II. Factual and Procedural History

The Petitioner is currently confined at the Minnesota Correctional Facility at Oak Park Heights, Minnesota, where he is serving a 200-month prison sentence that was imposed in 1998, following his convictions for Assault and Burglary. The Petitioner's convictions stem from an attack on his ex-girlfriend, which occurred on August 27, 1997.[2] The victim had obtained a Restraining Order against the Petitioner, because he had been harassing, and stalking her, after she had ended their relationship. Despite the Restraining Order, the Petitioner entered the victim's home through a basement window and, while she was sleeping, he attacked her with a screwdriver. He left the victim unconscious and covered with blood.

An account of the Petitioner's arrest can be found in a letter from Dr. R. Owen Nelsen, a licensed psychologist, who examined the Petitioner in connection with his sentencing. The letter relates as follows:

> Following the alleged assault, Mr. Iverson fled in the victim's minivan, eventually struck a guardrail, and was stopped on the shoulder of the road. He jumped from the vehicle, fell down a steep embankment, and was

---

[2]The facts of the Petitioner's crime are detailed in the Minnesota Court of Appeals' opinion in his initial State Court appeal. State v. Iverson, 1998 WL 799183 (Minn.App., November 17, 1998), 1998 WL 799183, pet for rev. denied (Minn., January 21, 1999).

> apprehended after a short chase. Upon arrival at the hospital emergency room, he complained of head pains, was found to have multiple posterior scalp lacerations, was reported to be alert and following commands, but somewhat confused.

See, Nelson Letter, attached to Petitioner's Pro Se Memorandum. After criminal charges were filed against the Petitioner, the Trial Court ordered a psychological evaluation in order to determine whether he was competent to stand Trial. The Petitioner was found to be competent, and he entered a guilty plea to charges of First-Degree Assault, and First-Degree Burglary. The 200-month sentence, that he received for his Assault conviction, was nearly double the presumptive sentence provided for under the State Sentencing Guidelines. He also received a 68-month concurrent sentence for the Burglary conviction.

On direct appeal, the Petitioner contended that the Trial Court had abused its discretion by imposing a sentence that so greatly exceeded the term provided by the Sentencing Guidelines. The Minnesota Court of Appeals upheld the Petitioner's sentence and, as noted, the Minnesota Supreme Court denied the Petitioner's request for further review on January 21, 1999. See, State v. Iverson, 1998 WL 799183 (Minn.App., November 17, 1998), pet. for rev. denied (Minn., January 21, 1999).

A few weeks later, the Petitioner filed an application for habeas corpus relief in this Court. Iverson v. Crist, Civil No.

99-222 (DSD/RLE). In that earlier matter, the Petitioner claimed that his 200-month sentence violated the Eighth Amendment prohibition against cruel and unusual punishment. This Court concluded that we could not entertain the Petitioner's Eighth Amendment claim because it had never been fairly presented to the State Courts and, therefore, we recommended that the Petition be summarily dismissed on exhaustion grounds. Our recommendation was adopted by the District Court, and the case was dismissed, without prejudice, on July 5, 2000.

The Petitioner made no further effort to challenge his conviction or sentence until May 18, 2001, when he filed a Motion for post-conviction relief in the State Trial Court. There he argued, for the first time, that he had been beaten by the police at the time of his arrest, and that "[t]his cruel and unusual punishment by police officers gave [the] Petitioner severe head trauma." See, Petitioner's May 18, 2001 Petition for Post-Conviction Relief, attached as an exhibit to Respondent's Motion to Dismiss. He further argued that the alleged beating by the police had exacerbated a pre-existing mental illness, and that the Trial Court had failed to consider this "major mitigating factor" at sentencing.[3] There-

[3]It is not clear why the Petitioner believed the alleged police beating, which supposedly occurred after he had committed his crime, should have been viewed as a "mitigating factor" for sen-
(continued...)

fore, the Petitioner urged that the Trial Court should "reduce his sentence to a guideline sentence of 110 months." Id. The Trial Court denied the Petitioner's post-conviction Motion and, again, the Petitioner appealed. The Minnesota Court of Appeals affirmed the Trial Court's ruling, see, Iverson v. State, 2001 WL 1402557 (Minn.App., November 13, 2001), and the Minnesota Supreme Court denied further review on January 15, 2002.

On February 4, 2002, the Petitioner filed the Petition which is currently before this Court. The Petitioner now claims that his mental illness, combined with the alleged police beating at the time of his arrest, rendered him incompetent to stand Trial.[4] As a result, the Petitioner is not presently challenging his sentence, as he was attempting to do in each of his previous State and Federal post-sentencing legal proceedings, for he is now challenging, for the first time, the validity of his conviction.

For reasons which follow, we conclude that the Petitioner's new challenge to his conviction is barred by the one-year statute

---

[3](...continued) tencing purposes.

[4]One of the reasons, that we appointed counsel for the Petitioner, was to assure that we accurately understood his claims. The "Memorandum In Support Of [Section] 2254 Petition," which was filed on the Petitioner's behalf, confirms that, "because of the head injury allegedly created by police brutality, Mr. Iverson argues that he was erroneously diagnosed as competent rather then [sic] as mentally ill." Id. at 3.

of limitations that applies to Federal Habeas Corpus Petitions, which have been filed by State prisoners. As a consequence, we recommend that the Petition be summarily dismissed.[5]

## III. Discussion

### Whether the Petition Must be Dismissed as Time-Barred under the Federal Habeas Petition Statute of Limitations.

A. Standard of Review. In 1996, Congress restricted the scope of a Federal Court's review of Habeas Petitions, when the underlying claims were adjudicated in State Court. See, Anti-terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996)("AEDPA"). One of the changes effected by the AEDPA was the establishment of a new, one-year statute of limitations for Federal Habeas Corpus Petitions which have been filed by State prisoners who seek a Federal Court's review of a State conviction, or sentence. See, Title 28 U.S.C. §2244(d). Section 2244(d) provides as follows:

[5]The Respondents contend that the Petition should be dismissed for lack of jurisdiction, on the basis that the Petition is a second, or successive Petition, which the Court of Appeals for the Eighth Circuit has granted leave to file. See, Title 28 U.S.C. §2244(b). We reject the contention as the Petitioner's first Federal Habeas Petition was dismissed without prejudice, on exhaustion grounds, so it does not count, as a prior Petition, for purposes of Section 2244(b). See, Slack v. McDaniel, 529 U.S. 473, 485-86 (2000)("A habeas petition filed in the district court after an initial habeas petition was unadjudicated on its merits and dismissed for failure to exhaust state remedies is not a second or successive petition").

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. The limitation period shall run from the latest of --
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Id.

Under these provisions, a State prisoner, who seeks Federal Habeas relief from his conviction or sentence, ordinarily must file his Petition within one year after his judgement of conviction "became final by the conclusion of direct review." Section 2244(d)(1).

However, if the prisoner is unable to file his Federal Habeas Petition in a timely manner, because of an impediment that was imposed by the State, or is relying on some newly recognized constitutional right that is retroactively applicable, or is relying on some new evidence which could not have been reasonably discovered in time to file a timely Petition, that one year deadline might be modified. See, Section 2244(d)(1)(B)-(D). In addition, the statute of limitations includes a tolling provision, which stops the running of the limitations period while the prisoner is pursuing a "properly filed" application for post-conviction relief in the State Court. Section 2244(d)(2).

B. Legal Analysis. In this case, the one-year statute of limitations began to run, pursuant to Section 2244(d)(1)(A), when the Petitioner's criminal conviction became final on direct appeal. The Petitioner's judgment of conviction "became final by the conclusion of direct review," upon the deadline for filing a Petition for Writ of Certiorari with the United States Supreme Court, following the completion of his direct State Court appeal. See, Smith v. Bowersox, 159 F.3d 345 (8th Cir. 1998)(State criminal convictions are not final for statute of limitations purposes until the deadline for seeking Certiorari has expired), cert. denied, 525 U.S. 1187 (1999).

Certiorari Petitions must be filed within 90 days after a final adjudication by a State's highest Court. See, Rule 13.1, Rules of the Supreme Court. The Minnesota Supreme Court denied review of the Petitioner's direct appeal on January 21, 1999. Thus, for the purposes of Section 2244(d)(1)(A), the Petitioner's Judgment of conviction became final, and the one-year statute of limitations began to run, on April 22, 1999 -- that is 90 days after the Minnesota Supreme Court declined to review his claims on direct appeal. To be timely, the instant Petition had to be filed within one year thereafter, or by no later than April 22, 2000, unless the one-year statute of limitations was tolled under Section 2244(d)(2), or was modified by one of the exceptions to that period found in Sections 2244(d)(1)(B)-(D).

The statute of limitations, which is applicable to this Petition, was clearly tolled during the time that the Petitioner's post-conviction Motion was pending in the State courts. Mills v. Norris, 187 F.3d 881, 883-84 (8th Cir. 1999)(the statute of limitations remains tolled during the entire period of time that post-conviction proceedings are pending in any of the State Courts, including the State Appellate Courts). In this case, therefore, the statute of limitations would have been tolled between May 18, 2001, the date when the Petitioner's State post-conviction Motion was filed, and January 15, 2002, the date when the Minnesota

Supreme Court denied the Petitioner's request for further review of his post-conviction claims.[6]

However, post-conviction-Motion tolling, by itself, cannot save the Petition from being time-barred, because, as is evident from the dates recited previously, the Petitioner did not file his post-conviction Motion until May 18, 2001, which was more than two years after April 22, 1999 -- the date on which his Judgment of conviction became final. Therefore, the one year limitation period, which is imposed by Section 2244(d)(1)(A), had already expired on April 22, 2000, well before the Petitioner filed his post-conviction Motion. "Once the one year statute of limitations has expired, it cannot thereafter be tolled by a motion for post-conviction relief." Bogan v. Moore, 55 F.Supp.2d 597, 600 (S.D. Miss. 1999); see also, Painter v. Iowa, 247 F.3d 1255, 1256 (8th Cir. 2001)(confirming that "the time between the date that direct review of a conviction is completed and the date that an applica-

[6]It should be noted that the statute of limitations was not tolled during the time when the Petitioner could have sought certiorari review of his post-conviction claims in the United States Supreme Court. See, Snow v. Adult, 238 F.3d 1033, 1035-36 (8th Cir.), cert. denied, 532 U.S. 998 (2001). Nor was the statute tolled during the time when the Petitioner's first Federal Habeas Petition was pending in this Court. See, Duncan v. Walker, 533 U.S. 167, 180 (2001)(holding that Section 2244(d)(2) tolling applies only to State -- not Federal -- collateral proceedings).

tion for state post-conviction relief is filed counts against the one-year period.").

Accordingly, the tolling provisions of Section 2244(d)(2) cannot save the Petition from being time-barred and, in order to do so, the Petitioner must show that the statute of limitation's commencement date was delayed for reasons addressed in Section 2244(d)(1)(B)-(D). The Petitioner has attempted to save his Petition by relying on Section 2244(d)(1)(D), which delays the running of the one-year statute of limitations until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."[7] According to the brief filed on the Petitioner's behalf, the Petitioner believes that Section 2244(d)(1)(D) is applicable because he has only "recently understood that his mental illness, diagnosed in 1999 as a psychotic illness, interacted with the head injury he sustained at the hands of officers in a way to render his competence evaluation ineffective." Memorandum in Support of [Section] 2254 Petition, at

[7]The Petitioner has not suggested that Section 2244(d)(1)(B) or (C) could be applied here, and it is clear that he could not sustain any argument based on either of those two clauses of the statute. As the Petitioner is unable to point to any act of the State which impeded the prosecution of his current claims, he cannot employ the exception found in Section 2244(d)(1)(B). Further, since the Petitioner's claims are not predicated on any newly-recognized, and retroactively-applied constitutional principle, he cannot utilize the exception to the statute of limitations contained in Section 2244(d)(1)(C).

8. In other words, the Petitioner is claiming that the running of the statute of limitations should be delayed because he only recently became aware of the claim he is attempting to assert.

We find no merit in the Petitioner's argument, for it is premised on the erroneous belief that a Federal Habeas Corpus claim does not become ripe, for purposes of Section 2244(d)(1)(D), until the prisoner recognizes the existence of the claim. The actual language of the statute, however, includes no mention of the prisoner's "awareness," "recognition," or "understanding," of his legal claims. Instead, the statute says that the limitations period begins to run when the "factual predicate of the claim or claims * * * could have been discovered through the exercise of due diligence." Section 2244(d)(1)(D)(emphasis added). Notably, the statute refers to the prisoner's discovery of facts, not claims; and it describes an objective standard, not a subjective one.

The Petitioner's Habeas claim is based on two supposedly new "factual predicates." The first is the alleged beating, by the police, at the time of the Petitioner's arrest in 1997, and the second is the alleged diagnosis of a psychotic illness in 1999. Both of these "facts," however, were well known to the Petitioner, or certainly "could have been discovered through the exercise of due diligence," more than a year before he filed his post-conviction Motion in May of 2001. Indeed, the Petitioner does not con-

tend that he was unaware of the facts on which his current claim is based. Instead, he contends that he did not understand the significance of those facts, until just recently. Under Section 2244(d)(1)(D), however, the statute of limitations began to run, at the latest, on the date that the Petitioner knew, or should have known, the facts underlying his claim, and not, as the Petitioner suggests, when he finally recognized the supposed significance of those facts. As the Court of Appeals for the Seventh Circuit succinctly observed, in Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000), "the trigger in [Section] 2244(d)(1)(D) is (actual or imputed) discovery of the claim's 'factual predicate,' not recognition of the facts' legal significance." See, also Hasan v. Galzza, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001)(Federal Habeas statute of limitations begins to run when the petitioner knows the important facts, not when their legal significance is recognized); Neuendorf v. Graves, 110 F. Supp.2d 1144, 1154 (N.D. Iowa 2000)(discussing, generally, the "factual predicate" language of Section 2244(d)(1)(D)). As the Court, in Owens, further explained:

> Most federal statutes of limitations are injury-based. Unlike some state systems, which start the time only when a party knows (or should recognize) that a legal wrong has been done, federal statutes use objective indicators as triggers * * *. [Citations omitted.] Section 2244(d)(1)(D) follows the norm for a federal statute of limitations. Time begins when the prisoner knows (or through

> diligence could discover) the important facts, not when the prisoner recognizes their legal significance. If [Section] 2244(d)(1) used a subjective rather than an objective standard, then there would be no effective time limit.

Id.

Unfortunately, prisoners are often unfamiliar with the law, or hindered by learning disabilities, mental impairments, or a lack of education.

While these impediments could delay a prisoner's ability to subjectively comprehend what claims they might assert in a Federal Habeas Petition, the prisoner cannot rely on such impediments to extend the statute of limitations. To permit such a result, would be, effectively, to render the statute of limitations, which is contained in Section 2244(d), to be meaningless, as prisoners could obtain a new one-year statute of limitations whenever they thought of some claim that had not previously dawned on them. Id. To avoid that result, Section 2244(d)(1)(D) is framed in objective terms, which start the statute of limitations running when the prisoner first knew, or should have known, of the facts, upon which his or her Habeas claims are based.

In this case, the Petitioner knew the alleged facts, on which his present claim is based, in 1997 and 1999, more than one year prior to the date on which he tolled the Federal Habeas statute of limitation in May of 2001, by filing his post-conviction Motion in

the State Court. As a result, he cannot rely on Section 2244(d)(1)(D) to bring his Petition within the one-year statute of limitations.

Finally, even though the Petitioner has not raised any specific argument based on equitable tolling, we have considered whether that doctrine might benefit him in this case. Although the Section 2244(d)(1) statute of limitations is subject to equitable tolling, such tolling is available only "when extraordinary circumstances beyond a prisoner's control make it impossible to file a [habeas corpus] petition on time * * * [or] when conduct of the defendant has lulled the plaintiff into inaction." Jihad v. Hvass, 267 F.3d 803, 805 (8th Cir. 2001); see also, Beery v. Ault, 312 F.3d 948, 951 (8th Cir. 2002). "'[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes.'" Id. at 806, quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000).

Our Court of Appeals has emphasized that equitable tolling cannot be based on such commonplace and non-external excuses as prisoner ignorance, inadequate or erroneous legal advice, see, Kreutzer v. Bowersox, 231 F.3d 460, 463 (8th Cir. 2000), cert. denied, 534 U.S. 863 (2001), or delays in obtaining transcripts, see, Gassler v. Bruton, 255 F.3d 492, 495 (8th Cir. 2001). Instead,

the Petitioner must show that some specific and truly extraordinary event, of a wholly external nature, made it impossible for him to meet the statute of limitations deadline.

Here, we find no external impediment that kept the Petitioner from prosecuting his current claim for relief in a timely manner. We do recognize that the Petitioner has alleged that he is suffering from a mental illness, and that this illness might have some effect on his ability to proceed in a timely fashion, particularly on a pro se basis. We note, however, that the Petitioner was able to file a direct appeal, and a Petition for post-conviction review in State Court, and has also been able to file two separate Federal Petitions for Habeas relief and, as a consequence, we are unpersuaded that the significant delay in the Petitioner's filing of his Petition should be excused under the equitable tolling doctrine. The Petitioner is clearly aware of the system in place for seeking review of his State Court conviction and, as is evidenced by his efforts in this case, he is also aware of how to seek counsel to assist him in presenting his claims to the appropriate Court.

In sum, we conclude that the Petition before us is time-barred, under Title 28 U.S.C. §2244(d)(1), and therefore, we recommend that the Petition be summarily dismissed with prejudice.[8]

---

[8]We do not overlook that, even if the Petition were timely, we (continued...)

NOW, THEREFORE, It is --

RECOMMENDED:

1. That the Respondent's motion to dismiss [Docket No. 10] be granted.

2. That the Petitioner's current Petition for a Writ of Habeas Corpus [Docket No. 1] be summarily dismissed.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to

---

[8](...continued)
would be obligated to summarily dismiss the Petition since the Petitioner has never presented the specific claim, which he raises in this Petition, to any Minnesota State Court. Simply stated, the Petitioner has not exhausted his State Court remedies with regard to his current challenge to his conviction, as he previously only challenged his sentence. Therefore, even if the instant Petition were not time-barred, it would have to be summarily dismissed. See, Title 28 U.S.C. §2254 (b) and (c); O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999) ("Comity * * * dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief"). However, because dismissal for failure to exhaust is without prejudice, we would not recommend dismissal on that ground, as we might then be impliedly suggesting to him that he could return to Federal Court, after exhausting his State Court remedies, to pursue his untimely claims. Since his current claims are time-barred, we recommend dismissal, with prejudice, on that ground.

this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 25, 2003**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 25, 2003**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.